## FIRST NAT. BANK OF VICKSBURG v. DREXLER.

### No. 5660.

Court of Appeal of Louisiana. Second Circuit.

June 30, 1938.

Rehearing Denied July 15, 1938.

Writ of Certiorari and Review Denied Oct. 31, 1938.

Thompson & Thompson, of Monroe, for appellant.

Hudson, Potts, Bernstein & Snellings, of Monroe, for appellee.

DREW, Judge.

This is an attachment proceeding in which plaintiff is seeking recovery on a promissory note alleged to be owned by and in the possession of plaintiff and to have been made by defendant.

Plaintiff is a national banking corporation, domiciled and doing business in Vicksburg, Mississippi. Defendant is a resident of Houston, Texas. Jurisdiction was acquired here by a writ of attachment under which defendant's undivided interest in the succession of his alleged uncle, at the time in process of administration was seized.

Defendant filed a plea to the jurisdiction which was sustained by the lower court, and on appeal the judgment was reversed by this court. See 171 So. 151.

Plaintiff alleged it was the owner and holder in due course and for value received before maturity of the note sued on; that it is past due and unpaid; that the note was stamped "paid" through error of the petitioner, all of which will more fully appear by reference to the note which is attached to and made part of the petition. The attached note shows on its face that it was stamped paid on August 29, 1934. Also on its face is the notation in writing: "Stamped paid in error. First National Bank & Trust Company, by E. S. Butts, Assistant Cashier. 8/29/34."

Plaintiff alleged defendant is an absentee non-resident of the State of Louisiana, but has property situated in the jurisdiction of the court, and that petitioner is entitled to have a writ of attachment for the protection and preservation of its rights. It alleged that Thomas E. Drexler died in Franklin Parish, Louisiana, on September 7, 1935, and that his succession has been opened in that Parish; that he died testate and his will has been probated in the above referred to succession proceedings, and that Mrs. Katie Lum, a resident of Vicksburg, Warren County, Mississippi, and Mrs. Eula Trezevant, a resident of Richland Parish, Louisiana, have been qualified as executrices of said will and succession; that the said executrices are seized and possessed of all the property and assets of the succession of Thomas E. Drexler; that an inventory has been filed showing the succession to be amply solvent and abundant assets to be distributed among the beneficiaries of said will; that defendant is one of the heirs, legatees and beneficiaries under the will of the decedent, defendant herein being a nephew of the deceased, Thomas E. Drexler, and as such is entitled to a undivided 1/18th interest in and to all the net assets of said succession; and that the 1/18th undivided interest of defendant is sufficient to pay the amount of his indebtedness to plaintiff, as is shown by the record and inventory in the succession proceedings, which are attached and made part of plaintiff's petition. It alleged the necessity of a curator ad hoc to be appointed to represent the absentee defendant and the absentee executrix, Mrs. Lum. It alleged it was entitled to have the undivided interest of defendant in and to the assets of the succession attached, said interest more fully appearing by reference to the attached inventory.

Plaintiff prayed for orders, service, etc., as provided by law and set forth in detail in the petition and prayer; and finally for judgment in the amount sued for against the 1/18th undivided interest of defendant in the succession; that the attachment be maintained and the interest of defendant be sold to satisfy plaintiff's judgment.

The writ of attachment was issued as prayed for upon plaintiff furnishing bond in the amount of $250. The bond was signed by the Vice President and Cashier of the plaintiff bank with the New Amsterdam Casualty Company as surety.

The inventory attached to the petition shows a total appraisement of the succession property of $212,334.65. The writ of attachment commanded the sheriff "to take into his possession all the 1/18th interest of the said T. E. Drexler Succession, his uncle, of which a certified copy of the inventory is attached to the petition."

The return on the writ is as follows:

"Received this writ of attachment together with certified copies of same in of-

fice Jan. 30, 1936, and on the same date proceeded to execute same by seizing the within described property and served said copies of writ on T. E. Drexler, by delivering one of said copies to C. W. Berry, Jr., curator ad hoc for defendant in person in Franklin Parish and posting the other copy on the front door of the court house room where the District Court is held in Franklin Parish.

"C. W. Berry, Sr., Dy. Shff."

The notices of seizure, which were served in accordance with law, notified the ones to whom they were addressed that the sheriff had seized and taken into his possession the ⅛th interest of the said T. E. Drexler Succession, as per copy of inventory attached to the petition.

After the plea to the jurisdiction had been disposed of by us adversely to defendant's contention and the case remanded to the lower court for further proceedings, defendant filed an exception of no cause or right of action and a motion to dissolve the writ of attachment. The exceptions and motion were tried and overruled by the lower court.

Defendant then answered admitting that he signed as maker the note sued on but that it is stamped "paid". He denied being indebted on said note; denied that he was a non-resident or that he had property within the jurisdiction of the court. Defendant admitted that Thomas E. Drexler died in Franklin Parish, Louisiana, and that his succession had been opened; admitted the will had been probated and the executrices appointed, as alleged by plaintiff; admitted the inventory had been filed in the succession proceedings but that it only shows the value and description of the property owned by the succession. Defendant alleged that plaintiff's allegations that he was a nephew of the deceased and therefore a beneficiary, legatee and heir under the will are mere conclusions of the pleader and he therefore neither affirmed nor denied these allegations. He denied as written the allegation made by plaintiff that defendant's ⅛th undivided interest in and to the succession property was amply sufficient to pay his indebtedness to plaintiff; denied the necessity for the appointment of a curator ad hoc for defendant and the executrix, Mrs. Lum; and denied that plaintiff is entitled to a writ of attachment.

Further answering, defendant alleged there was no consideration for his signing and executing the note sued on.

The lower court rendered judgment for plaintiff as prayed for, and defendant is prosecuting this appeal.

Defendant seriously urges here the exceptions and motion overruled below. The exception of no cause or right of action was tried below on the face of the petition. Defendant contends in support of his exception (1) that the allegation that the note had been stamped paid through error by petitioner was merely a conclusion which would not admit of proof of error in that it did not allege the circumstances or conditions under which it was marked paid through error, and since the note sued on is stamped paid by plaintiff on its face and no explanation is to be permitted under the pleadings, the note is, for the purposes of this suit, paid and plaintiff is without cause or right of action to sue on a paid note.

■ The note is attached to the petition and made part thereof, therefore, it controls the allegations of the petition. The note shows a partial payment of $283, being the cash surrender value of a New York Life Insurance policy made on August 29, 1934. The face of the note bears a stamp "paid August 29, 1934, First National Bank & Trust Company". It is to be noted the date it was marked paid is the same date the partial payment of $283 was made. The face of the note also bears the notation made on the same day that the note was marked paid through error, this notation being signed by the assistant cashier. The notation on the back of the note showing a partial payment on August 29, 1934, and the notation on its face showing it marked paid, together with the notation showing "stamped paid through error," makes it clear to our minds that the "paid" stamp was inadvertently placed on the note. Whoever handled the partial payment for the moment erroneously accepted it as payment in full. For the purpose of the exception, we must consider all notations on the note. We would not be justified in considering the paid stamp and disregarding the other notations. The exception cannot be sustained on this ground.

■ The next contention of defendant under his exception is that plaintiff does not allege that this suit was authorized by a resolution of the Board of Directors of plaintiff bank, nor does it allege that any officer has been authorized to sign for and in its behalf any attachment bond. Plaintiff is a national banking corporation creat-

611

ed under the laws of the United States, and is therefore governed by the laws of the United States and not by state laws. U. S. Revised Statutes, § 5136, as amended, 12 U.S.C.A. § 24, par. 4, provides that national banks have the power to sue and be sued, complain and defend, in any court of law and equity as fully as natural persons. We find nothing in the Federal Banking laws which requires a resolution of the board of directors to authorize the institution of a suit on a note due the bank. Any state law limiting or lessening the right and power granted a national bank by the laws of the United States cannot have any effect and would not be binding on the national bank. To the contrary, if greater rights are extended to national banks by a state law than are specifically granted by the laws of the United States and are not in any wise in conflict with the powers granted by the United States government, the national bank may be governed thereby. The United States laws governing national banks do not, so far as we have been able to find, provide that any particular officer of the bank is alone authorized to sign and execute bonds for the issuance of conservative writs.

■ Act No. 250 of 1928, § 35, par. 7 of the State of Louisiana, provides:

"The president, vice-president or manager of any corporation organized under the laws of Louisiana, or of a foreign corporation doing business in this State, shall have power in the name. and in behalf of the corporation to authorize the institution of any suit and other legal proceedings, and no exception of want of authority shall lie on the part of any defendant. They shall have authority to direct the issuance of conservatory writs and to bond property in custodia legis, without other general or special power from the board of directors of such corporation. Such person, or persons, are also authorized by and on behalf of said corporation to execute in its name any bond, or bonds, in connection with any legal proceedings where it is a party plaintiff, defendant, intervenor, third opponent or otherwise interested, and to make any affidavit required by law or the rules of the court; and such acts by the person, or persons, designated in this Section, shall have the same force and effect as the act of the corporation itself and be binding upon it; provided, however, that the authority and powers herein conferred upon said officers, may be modified, limited or denied to them by the articles or by-laws of the corpora-

tion or by resolution of the board of directors."

This provision of law does not abridge, limit, nor is it in conflict with any provision of the United States law affecting national banks, and it has effect as to such banks. City National Bank of Clinton v. Flood, 298 U.S. 666, 56 S.Ct. 749, 80 L. Ed. 1390; Flood v. City Nat. Bank, 220 Iowa 935, 263 N.W. 321.

■ We are convinced, therefore, that there is no merit in the contention of defendant as to want of authority to sue and want of authority of the vice president of plaintiff bank to execute the attachment bond.

■ The next contention of defendant under this exception is that the petition does not contain an allegation of fact showing defendant was and is a nephew of the deceased, Thomas E. Drexler. The alleged defense is further evidence of the highly technical defenses made in this case. Deceased left a will in which he bequeathed his estate to his sister and nieces and nephews in equal proportions. Plaintiff alleged that defendant was an heir and legatee under the will, by virtue of being a nephew of the deceased. It is true it did not deraign the family tree, but under our law a nephew can mean nothing more or less than a son of either a brother or sister of the deceased. It is to be remembered that the suit is against T. E. Drexler himself who plaintiff claims and alleges is a nephew of the deceased. It is quite different from a suit in which the plaintiff was claiming something by virtue of an allegation of heirship, but even in that case, we are convinced that to designate a litigant as a nephew of a deceased person meets all the requirements of the law and sufficiently informs defendant of the nature of plaintiff's claim and of what he intends to prove in an effort to establish his claim.

We might add that in the petition of the executrices for probation of the will of Thomas E. Drexler, deceased, which was filed on September 12, 1935, it is alleged that T. E. Drexler of Houston, Texas, is a child of Henry C. Drexler, deceased, who was a brother of Thomas E. Drexler. The petition above referred to was made a part of plaintiff's petition. There is no merit in this contention.

■ The next contention under the exception is that it is not alleged in the petition and no documents are attached

showing that defendant has accepted or renounced the legacy at the time of the filing of this suit, and for that reason plaintiff's suit failed to set forth a cause or right of action; that his only right of action prior to such time as defendant accepts or renounces the legacy, is to bring a suit to require him to do one or the other. If he renounces, then plaintiff has its right to sue for authority to accept in his place and stead. If plaintiff were suing on a debt owed it by the succession, defendant's contention would be meritorious, but such is not the case. Plaintiff is not suing on a succession debt but upon an individual debt owing to it by the legatee of the succession. The only concern plaintiff has with the succession is to keep clear for the purpose of executing on it after judgment the interest bequeathed to the defendant herein whom it claims is indebted unto it. The succession is not affected by the suit, only insofar as defendant's interest is concerned. Defendant's right to accept or renounce is in no way affected by the suit.

The contention is therefore unsound. The exception of no cause or right of action was correctly overruled by the lower court.

The motion to dissolve the attachment contains the following alleged reasons for its dissolution:

"1. That plaintiff herein has not given the bond required by the laws of the State of Louisiana for the issuance of attachments.

"2. That the bond has not been acknowledged in the manner and in the form required by law, and particularly that the acknowledgment before a Notary Public in Mississippi of a bond to have effect in Louisiana is unauthorized.

"3. That the plaintiff, First National Bank & Trust Company of Vicksburg, has not signed any bond; that the bond is only signed by a person styling himself as Vice President and Cashier.

"4. In the alternative, if the court should hold that said bond was a bond of the First National Bank & Trust Company of Vicksburg, which is denied, then and in that event mover shows that no authority is shown in said person to sign and execute said bond.

"5. That the party signing for the New Amsterdam Casualty Company, acting under a power of attorney attached to the bond, was without authority since the power of attorney thereto attached is insufficient to authorize him to sign an attachment bond.

"6. That said bond has never been filed and was not filed prior to the issuance of said attachment, and that without the filing of said bond the Clerk of Court was without authority to issue an attachment herein.

"7. That in its petition plaintiff prays that the 1/18th interest of T. E. Drexler in the succession of his uncle, Thomas E. Drexler, as shown by certified copy of the inventory in said succession which is attached to the petition, be attached. Mover shows that no copy of the inventory was attached to the petition at the time the order was issued nor at the time the purported attachment was issued.

"8. That the petition is not properly verified in that it is sworn to by an attorney who is not authorized to make affidavits in attachment proceedings.

"9. That no property has been seized under said attachment and that the sheriff of said parish has not taken into his possession as is required by law any property belonging to T. E. Drexler, defendant.

"10. That the writ of attachment required and directed the sheriff to attach 'one-eighteenth interest of the said T. E. Drexler Succession, his uncle, of which a certified copy of inventory is attached to petition'. That said writ is indefinite in describing what property was to be seized or whose interest was to be seized and attached, and further for the reason that the sheriff was without right or authority to attach succession property which at the time was under administration of the District Court of Franklin Parish, and that the sheriff did not take into his possession any property belonging to said succession or any interest of mover in said succession, and that no copy of any inventory was attached either to the writ of attachment or to the original petition.

"11. That the return of the sheriff on the writ of attachment shows that no property was seized or attached and is insufficient since it does not describe how he seized or attached said property.

"12. That said writ of attachment has never been filed and therefore there was never any writ legally issued and any attempted act of the sheriff under a writ which has never been filed is without effect.

"13. That even if the court should hold that the attachment was properly issued and

filed, which mover shows was not done, then that no inventory was made by the sheriff of the Parish of Franklin, as required by the Code of Practice, Article 257, and attached to his writ."

Reasons 1, 3, 4 and 5 have been discussed in passing on the exception of no cause and right of action and disposed of there. Reasons 9 and 10 we disposed of adversely to defendant's contention in our former judgment on the plea to the jurisdiction. We will not discuss them again. The first reason urged to dissolve, which we will discuss, is No. 2 wherein plaintiff alleged the attachment bond had not been acknowledged in the manner and form required by law, in that the acknowledgment was before a Notary Public in Mississippi and therefore could have no effect in Louisiana. We know of no law which requires that the Notary before whom an attachment bond is acknowledged shall be one qualified by the laws of this State. Defendant has cited us to no law so holding. Plaintiff is domiciled in Mississippi and the bond was properly executed, in accordance with our laws, before a Notary Public qualified under the laws of Mississippi. We think the law requires no more.

The 6th reason urged by defendant is that the attachment bond was never filed and, without the authorizing of the bond, there was no authority for the issuance of the writ of attachment. The bond was attached to the original petition, as is required by Article 245 of the Code of Practice, and when the petition was filed, the bond was likewise filed.

There is no merit to reason No. 7 and the record fails to show the allegation to be true. Reason 8 attacks the verification of the petition by the attorney, alleging he was without authority to make affidavits for his client in an attachment proceeding. The verification recites the absence from the state of any officer or agent of the appellee bank. Under such an affidavit, the verification is properly made by the attorney. Hardie v. Colvin, 43 La.Ann. 851, 9 So. 745.

Reason No. 11 we think was properly dealt with in our former opinion. Defendant has offered no argument in his brief or otherwise to sustain this reason. We are at a loss as to what counsel for the defendant is contending for thereunder. The writ of attachment was issued in regular manner after the bond was filed. The sheriff executed the writ by constructively taking into his possession the interest of the defendant in the succession of his uncle, Thomas E. Drexler, and made returns accordingly. We have quoted his returns in the first part of this opinion.

The 13th and last reason urged as a ground for dissolution of the writ of attachment is that the sheriff failed to comply with Article 257, Code of Practice, in that no inventory was made by him of the property seized. This article of the Code of Practice clearly has no application to an attachment of a right, such as in the case at bar. It applies to tangible property taken into possession by the sheriff. The article excepts from its provisions such sums as are due by the garnishee. That, we think, is because in the case of garnishment, the sheriff does not take physical possession of any property. He did not take physical possession of any property in the case at bar. He seized a right, an intangible ⅛th interest in and to a succession, as per the inventory attached to the petition. We think the contention is without merit.

It therefore follows that the motion to dissolve the writ of attachment was properly overruled. This brings us to the merits of the case.

Plaintiff placed on the stand Mr. E. S. Butts, assistant cashier of the plaintiff bank, who identified the note sued on as belonging to the bank, having been taken by it in renewal of a past due note. He testified that the amount claimed by plaintiff was the correct amount due on said note. He further testified that during the year 1934 he and Mr. R. J. Cashman handled all the bank's notes in the normal course of business; that Mr. Cashman was operating the note desk; and that he or the note teller placed the "paid" stamp on the note through error, no doubt confusing the partial payment made on that date with full payment; and that he caught the error and personally made the notation of error on the face of the note, all of which was done on the same day. Mr. Cashman corroborated Mr. Butts on all material facts. The record discloses that defendant is and was a resident of the state of Texas at the time of the filing of this suit. The record also discloses that the original note executed by defendant was given to the American Bank & Trust Company for a loan made to him by that bank, and that subsequently the plaintiff bank acquired it through purchase

from the American Bank & Trust Company in liquidation. The defense of want of consideration falls for the reason it has been repeatedly held that surrender of a past due note is a valid consideration for a new note.

The record discloses that T. E. Drexler, defendant herein, is the same T. E. Drexler who was recognized as a nephew of Thomas E. Drexler, deceased, in those succession proceedings and final accounting which had been filed and approved by the court before trial of this suit. In said final accounting he was recognized as a nephew and entitled to ⅟₁₈th interest in the succession property. The defendant did not offer any evidence to rebut the above narrated evidence. The defense made in every respect was purely technical.

We are of the opinion plaintiff has made out its case by a preponderance of the evidence.

In this court defendant urges a defense not raised by any pleadings below. He contends now that the record discloses that when the case was appealed to this court on the plea to the jurisdiction by plaintiff from a judgment of the lower court sustaining the plea, only a devolutive appeal was prosecuted, therefore, the attachment which was dissolved by the lower court when it sustained the plea releasing the property, could not again attach of its own right when this court reversed the lower court and overruled the plea to the jurisdiction. Therefore, since there was no attachment, there was no res and there was nothing before the court upon which a judgment could be based.

Plaintiff asked for and was granted a suspensive appeal from the judgment of the lower court sustaining the plea to the jurisdiction, on the ground that the attachment could not issue in such a case. An appeal bond in an amount sufficient to sustain the suspensive appeal was filed. Defendant now contends it was filed too late—. after the delays allowed by law. The appeal was prosecuted in this court as a suspensive appeal. After the judgment was reversed here and the case remanded, defendant filed an exception of no cause or right of action and a motion to dissolve the attachment, which he now contends was dissolved by failure to suspensively appeal. The question is raised now by defendant in oral argument and brief in this court for the first time. He did not file in this court or the lower court when the case was here before, any motion to dismiss the suspensive appeal and did not raise the question by any written pleadings up to this time. He filed answer to the suit and went to trial on the merits without making any objection. It is clear to us that it is now too late for defendant to raise the question of any rights he might have had being waived. We will therefore refrain from discussing the merits of this contention. Lewis v. Burglass, 186 La. 36, 171 So. 564.

We therefore conclude that the judgment of the lower court is correct and it is affirmed, with costs.