116 So.2d 855 (1959)
Felix HARGETT, Plaintiff-Appellee,
v.
CHEMICAL SERVICE, INC., et al., Defendants-Appellants.
No. 4920.
Court of Appeal of Louisiana, First Circuit.
December 21, 1959.
*856 Voorhies, Labbe, Voorhies, Fontenot & Leonard, Lafayette, for appellants.
Saloom & Trice, Lafayette, for appellee.
Before ELLIS, LOTTINGER and TATE, JJ.
TATE, Judge.
Plaintiff brings this suit to recover damages for personal injuries sustained while he was riding as a passenger in a truck. Made defendants are: Fred Hargett, the driver of the truck; Chemical Service, Inc., which owned the truck and employed Fred Hargett; and the liability insurer of the truck. The defendants-appellants appeal from judgment casting them for plaintiff's damages. In this court, the plaintiff moves to dismiss the appeal, and he also answers the appeal and prays that the award be increased.
The sole question posed by defendant's appeal is whether the plaintiff himself was guilty of negligence contributing to the accident so as to bar his recovery.
The accident in which the plaintiff was injured occurred about 1½ miles south of the city of Lafayette at approximately 4 o'clock in the morning. For purposes of *857 this appeal the negligence of the driver of the truck, Fred Hargett, is uncontested. Driving a heavily loaded truck along a portion of a highway being enlarged and repaired, the driver did not see (allegedly because of a patch of fog, to which he alone testifies) an illuminated barricade across the highway until within 100-200 feet of it. Although he was then proceeding at a reasonable speed of 25-30 mph and at once applied his brakes, due to the heavy load upon his truck he was unable to stop or to safely negotiate a left turn into a detour around the barricade. The truck turned over on its right side as the driver attempted to pull into the detour, causing moderately severe injuries to the passenger, the plaintiff herein.
Initially, the trial court dismissed plaintiff's suit soon after conclusion of the trial and before the transcript of evidence was filed, holding "the evidence is conclusive that the driver of the truck had been drinking profusely and continuously for a long period of time, and with the knowledge of the plaintiff. This knowledge should have made plaintiff aware of the condition of the driver. He was, therefore, independently negligent in accepting a ride with the driver who was obviously under the influence of liquor, and [this] will prevent recovery."
However, upon application for rehearing, and after study of the transcript of evidence which was filed subsequent to the original judgment, the trial court stated that, "Reappraisal of the testimony now reveals that the Court was in error in rendering judgment in favor of the defendants and against the plaintiff," continuing:
"Contributory negligence is a special defense, and the defendant carries the burden of establishing it by a preponderance of the evidence. Schick v. Jenev[e]in, 145 La. 333, 82 So. 360; Mequet v. Algier[s] Manufacturing Co., Ltd., 147 La. 364, 84 So. 904; Burns v. Evans Cooperage Co. Inc., 208 La. 406, 411, 23 So.2d 165; Savoie v. Dupuy, 218 La. 717, 50 So.2d 817; Demerest v. Travelers Insurance Co. [234 La. 1048], 102 So.2d 451.
"A re-examination of the record discloses that the defendants have not discharged such burden. As the defense is a special one, the defendants have the burden of proving:
"1. That the driver was in fact intoxicated.
"2. That the plaintiff knew or should have known the driver was intoxicated.
"3. That the intoxication of the driver caused or contributed to the accident.
"There is the testimony of two disinterested witnesses who arrived at the scene shortly after the accident, a state trooper and a two wago operator. Both testified the driver was not drunk. (Perrodin, Tr. Pg. 40; Tr. Pg. 49).
"The testimony of the other witnesses is not conclusive and does not sustain the burden imposed upon the defendants to prove contributory negligence by a preponderance of the evidence."
Succinctly, the principal issue upon this appeal is whether the trial court was (as defendants-appellants contend) correct in its first impression that intoxication on the part of defendants' driver was proven to have contributed to the accident; or whether instead correct was (as plaintiff-appellee argues) the trial court's subsequent conclusion on rehearing that the defendants did not bear their burden of proving that the drinking of their driver contributed to the accident.
The evidence shows that on June 25, 1957 Felix Hargett (the plaintiff), from Kentucky, was visiting his nephews, Lloyd Hargett (the president and principal stockholder of Chemical Service, Inc., the defendant corporation) and Fred Hargett (the driver of the truck at the time of the accident, who was employed in his brother's *858 business.) Relevantly to the issue before us, Felix and Lloyd had dinner at the latter's home and were drinking from an already opened fifth of whiskey when they were joined at about 7:30 p. m. by Fred, who had had nothing to drink prior to that time. The three men continued talking and drinking at Lloyd's house until 11:00 or 11:30 when they finished the fifth. They went to the Petroleum Club in Lafayette, where they had two drinks each and purchased another fifth of whiskey. Immediately after the club closed at midnight they returned home, where the evidence conflicts as to whether there was substantially any more drinking.
The witnesses agree that the plaintiff fell asleep in a chair at about 1:00 or 1:30, while Lloyd and Fred entered into a business discussion concerning rates of pay. When the discussion concluded at about 3:45 a. m., Fred roused his uncle, the plaintiff, and they entered the truck to go to Fred's home. The accident occurred a few minutes later while they were en route.
Factually, the issue centers upon how much Fred drank at Lloyd's house from the already opened fifth between 7:30 and 11:00 or 11:30, and how much Fred drank between the time they returned home from the Petroleum Club at shortly after midnight and 3:45 a. m. when Fred left with his uncle for his home. It should at this point be stated that the evidence affords every indication that the plaintiff's counsel is correct in stating that the plaintiff's nephews were antagonistic to him at the trial.
The plaintiff states that Fred had two highballs during the time he was in Lloyd's house, two more at the Petroleum Club, and two more when they arrived back again at Lloyd's house. At a discovery deposition six weeks before the trial, Fred stated that he had had two or three drinks at Lloyd's house, two or three more at the Petroleum Club, and nothing more to drink when they returned home; at the trial, however, he stated that he had from 4-7 drinks at Lloyd's house after dinner, two more at the club, and from 4-6 more while he and Lloyd discussed their business at the latter's house after they returned from the club (about 2 of them after the plaintiff fell asleep). Lloyd stated that he and Felix had been drinking from the fifth of whiskey before Fred came, and that the three of them finished whatever whiskey was left in the bottle; that they went to the Petroleum Club and had two or three drinks each; and that they returned home and had "several more drinks. * * * I don't exactly recall how many", while Felix fell asleep while he (Lloyd) and Fred entered into a discussion of their business from about 1:00 or 1:30 to 3:30 or 3:45. Lloyd didn't think either Felix or Fred were "drunk" when they left, but added that "they were pretty well on the way, both of them"; he later stated that Fred "was bound to have been tight, he had been drinking so long" and that "he was a little bit too drunk to be driving."
We are unable to hold that the trial court erred in finding that the defendants-appellants did not prove by a preponderance of the evidence that drinking on the part of Fred Hargett contributed to the accident. Essentially, the determination of the issue depends upon an evaluation of the credibility of Fred and Felix at the trial. Their testimony then that Fred was intoxicated is contradicted by the testimony of the plaintiff; by that given by Fred at the prior discovery deposition; and by that of the investigating state trooper and of a tow operator whom Fred helped retrieve scattered tools and equipment following the accident. These latter two independent witnesses were positive that although Fred had been drinking, it was not to a degree that impaired his ability to drive. It is the function of the trier of fact, not of the appellate court, to determine which is correct of two opposing versions by apparently equally credible witnesses.
It is relevant to note that there is no evidence as to how much whiskey was left in the first fifth when Fred started to drink, *859 and no evidence whatsoever as to how much was left when Fred left Lloyd's house in the second fifth which was brought from the Petroleum Club. Nor do we believe that the impairment by alcohol of Fred's perceptions can necessarily be deduced from the accident itself, which resulted from a misjudgment in the ability to brake the heavily-loaded truck as well as from the failure to react more timely to the well-lighted barricade across the highway; when by the preponderance of the evidence from disinterested witnesses Fred was not under the influence of intoxicants after the accident, and where there is no convincing proof that he had imbibed enough whiskey to become intoxicated during the eight hours he had been with Lloyd and the plaintiff prior to the accident. White v. State Farm Mut. Auto. Ins. Co., 222 La. 994, 64 So.2d 245, 42 A.L.R.2d 338; Delaune v. Breaux, 174 La. 43, 139 So. 753.
The defendants-appellants do not question the trial court's award of $6,650 for the special and general damages sustained by plaintiff, but the latter by answer to the appeal complains that the award of general damages is insufficient.
Deducting the special damages for medical expenses and for loss of earnings for 29 weeks as a result of accident-caused disability, the trial court awarded approximately $4,150 for plaintiff's pain, suffering, inconvenience, and shock at the time of the accident and thereafter until he was medically discharged seven months later.
Plaintiff suffered multiple and extensive lacerations of both ears, which were repaired by plastic surgery immediately after the accident, and also a compression fraction of the eleventh thoracic vertebra of the spine. As a result of the latter injury, he was disabled for approximately 29 weeks and forced to wear a heavy and extremely uncomfortable brace for about six months. He suffered reasonably great pain for about three days after the accident, diminishing greatly thereafter. As of the time of his medical discharge and thereafter, although plaintiff complains of pain upon the more extreme flexions of his back, there is no evidence of substantial residual disability or pain. The award does not appear to be manifestly insufficient. See e. g., Jenkins v. Audubon Ins. Co., La.App. 1 Cir., 110 So. 2d 221; Brock v. Southern Farm Bureau Cas. Ins. Co., La.App. 1 Cir., 94 So.2d 492; Merchant v. Montgomery Ward & Co., La. App. 1 Cir., 83 So.2d 920.
Motion to Dismiss the Appeal.
The motion to dismiss the appeal is based chiefly upon the following circumstance: Although counsel for defendants-appellants moved for and obtained an order of suspensive appeal in the name of all three defendants, the bond as furnished (in the correct amount and otherwise in good order) listed only the insurer defendant as the judgment debtor against whom the execution of the judgment was suspended by the bond. Counsel for plaintiff-appellee therefore moves to dismiss the suspensive appeal insofar as the two insureds who were cast are concerned (namely Fred Hargett and Chemical Service, Inc.) on the ground that they have furnished no bond at all.
However, it is patent that the failure of the supersedeas appeal bond to include the two insureds as well as their insurer was merely a clerical error in completing the bond. The insurer's liability was predicated solely upon that of the two insureds, and it would not be liable if they were not. The amount of the bond for all three appellants, cast on the identical basis, is exactly the same.
We think that this is an instance of where a litigant has furnished, in intended compliance with the order of appeal, a bond that is "incorrect by reason of errors or omissions therein" which he is entitled to correct (LSA-R.S. 13:4572) by appropriate proceedings in the trial court (LSA-R.S. 13:4573). Under such circumstances, the appeal may not be dismissed "for any inaccuracy or omission in the bond" unless the appellant has failed to correct such omission *860 after notice by appropriate proceedings in the court of original jurisdiction. LSA-R.S. 13:4579. See Succession of Roth, 230 La. 33, 87 So.2d 719; cf., Hernandez v. Ethyl Corporation, La.App. 1 Cir., 83 So.2d 150.
As to various alleged irregularities in the devolutive appeals originally and subsequently perfected by the insureds, if not cured by the subsequent devolutive appeal, they are deemed to have been waived by the appellee's having filed an answer to the appeal without reserving his rights under the motion to dismiss the appeal. D'Angelo v. Nicolosi, 188 La. 326, 177 So. 64, 65; Lewis v. Burglass, 186 La. 36, 171 So. 564.
The motion to dismiss the appeal will therefore be denied.
For the foregoing reasons, the judgment of the district court is affirmed.
Affirmed.